IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

Denise Ward, )
 ) C/A No.: 4:08-1084-MBS
        Plaintiff, )
 )
vs. )
 )
Michael J. Astrue, Commissioner of ) **O R D E R**
Social Security, )
 )
        Defendant. )
 )

This is an action brought pursuant to Section 205(g) of the Social Security Act (the "Act"), codified as amended at 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner").

I. <u>PROCEDURAL HISTORY</u>

Plaintiff Sheron Postell alleges that she has been disabled since September 25, 2004 because of depression, panic attacks, migraine headaches, confusion, loss of focus, dizziness and nausea, and body aches. Plaintiff filed an application for a period of disability and disability insurance benefits on August 2, 2005. Her application was denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on January 12, 2007. On August 20, 2007, the ALJ issued a decision that Plaintiff was not eligible for a period of disability or disability insurance benefits under sections 216(i) and 223(d), respectively, of the Act. The decision of the ALJ became the "final decision" of the Commissioner on February 8, 2008, after the Appeals Council determined that there was no basis for granting Plaintiff's request for review. Plaintiff thereafter brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of the "final decision" of the Commissioner.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Thomas E. Rogers, III for a Report and Recommendation. On August 12, 2009, the Magistrate Judge filed a Report and Recommendation in which he recommended that the Commissioner's decision to deny benefits be reversed and benefits awarded. The Commissioner filed objections to the Report and Recommendation on August 25, 2009.

This matter now is before the court for review of the Magistrate Judge's Report and Recommendation. The court is charged with making a de novo determination of any portions of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b).

## II. STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The

statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### III. DISCUSSION

A. The Record

The facts are set out in detail in the Report and Recommendation. Briefly, Plaintiff was born on August 16, 1952. She has an associates degree in interior design. Plaintiff worked as an administrative secretary, center coordinator, interior designer, office manager, and senior administrative assistant. Plaintiff alleges that she stopped working because her anxiety and depression made it impossible for her to function in a work environment.

Plaintiff was treated by H. Phillip Morris, Jr., her family practitioner, beginning in June 2000. On July 10, 2003 she complained of depression. She was assessed with depression and perimenopausal symptoms and started on Lexapro. Tr. 184. On July 24, 2003 Plaintiff reported to have a little bit of improvement on the Lexapro, maybe a little less irritable, still very depressed, down, no energy. Tr. 182. Plaintiff's dosage of Lexapro was increased and Plaintiff and her husband were encouraged to get couples counseling. Tr. 182. On August 14, 2003, Plaintiff saw

3

Dr. Morris and reported feeling better and more animated, although still depressed and deenergized. Tr. 181.

On June 11, 2004, Plaintiff was examined by Dr. Morris. She reported that she had used up all her sick and vacation leave in the last two months. Plaintiff reported no energy, no motivation to do anything, loss of interest, no crying spells, positive irritability, hypersomnia, never feeling rested, some desire to flee and leave her life situation, no suicidal or homicidal thoughts, difficulty making decisions and thinking. Dr. Morris approved leave for Plaintiff under the Family Medical Leave Act for one months, and instructed her that "if she is not markedly improved in two weeks then I will need to send her to a psychiatrist, because we have not been able to ever break through these cycles which I have treated now for the fourth time." Tr. 176. Dr. Morris added Wellbutrin XL 150 to her regimen and continued her on Lexapro 20.

On June 28, 2004, Dr. Morris saw Plaintiff for a follow up and noted that the depression was "markedly improving, with still a ways to go, but at this point it is encouraging that she is improved." Tr 175. Plaintiff was seen by Dr. Morris on July 12, 2004 and reported being about ninety percent better. Tr. 174. On August 17, 2004, Plaintiff reported to Dr. Morris that she felt good, was exercising, but still had a lot of fatigue and lack of energy. Dr. Morris approved her to return to work the following Monday. Tr. 172. However, on September 9, 2004, Plaintiff saw Dr. Morris and stated feeling depressed and almost destructive. Dr. Morris discontinued the Wellbutrin. Tr. 170.

On February 1, 2005, Plaintiff returned to see Dr. Morris. She reported that she was sleeping better but "has decided she has adult ADD. Says she gets multiple projects going on can't finish any of them. Sort of flips from thing to thing, can't focus, and now that she is able to get good rest she

realizes it. Also denies being depressed. Headache better." Tr. 167.

Dr. Morris referred Plaintiff for evaluation to Matt F. Butryn, Ph.D. Tr. 167, 163. Dr. Butryn evaluated Plaintiff on March 2, April 4, April 11, and May 19, 2005. Tr. 137. Dr. Butryn reported that Plaintiff's IQ scores were in the borderline impaired range of performance, and noted that her IQ indexes were grossly out of proportion with what would be expected given her educational background. Tr. 138. Dr. Butryn noted that Plaintiff's performance on individual subtests widely fluctuated from one task to the other. Dr. Butryn stated that Plaintiff's test profile was consistent with

> 1. Poor effort and motivation (Keep in mind, that these IQ scores taken at face value would place Ms. Ward only a few points above the mentally retarded range of intellectual functioning), 2. Possible intention to present herself as worse off than she really is, and 3. Someone coping with significant emotional and, in particular, anxious symptomatology.

Tr. 137.

Dr. Butryn concluded:

> [W]hat appears to be a problem and is something that even the patient herself repeatedly falls back to is anxiety. . . . I also believe that this patient was not motivated to perform at her best capacity during this testing but rather is motivated to acquire disability payments for her condition. That is likely why she performed so poorly across most of the testing, reported in the extreme her symptomatology, and has been so persistent during this evaluation to pursue a diagnosis of ADHD when her life history as reported to me by the patient and her husband just does not support any of that in the extreme. In my opinion, it would be misleading to consider diagnoses of ADHD or other more severe pathologies for the patient such as Bipolar Disorder. Her symptom report, behavioral presentation, background, and objective testing just do not support such contentions. . . . As long as the possibility of attaining disability payments exists for this patient, her symptoms will probably not improve appreciably.

Tr. 139.

On August 22, 2005, Dr. Butryn prepared an evaluation summary in which he opined that

5

Plaintiff was severely incapacitated by depression and anxiety, and diagnosed her with Severe Generalized Anxiety Disorder and Major Depressive Disorder. According to Dr. Butryn,

> The client [Plaintiff] is able to understand and carry out simple instructions and tasks. The client is not able to understand and carry out complex task demands. The client's ability to interact appropriately with the public, supervisors, and co-workers is limited but not precluded. Her ability to follow work routines and complete production expectations is minimal due to a slow pace of work, lack of motivation, and emotional instability. Her concentration and attention capacity is limited. The client would likely decompensate under stressful conditions, and her tolerance for frustration is a major problem. She is reportedly independent for many activities of daily living except needing constant prompting and frequent assistance by her husband. Physically, she reportedly may have difficulty sitting, standing, lifting, or carrying heavy loads for extended periods of time due to decreased stamina. Her strength and stamina have declined over the past few years. Communication with the client was intact due to her relatively intact capacity for verbal comprehension and expression. She appeared very emotionally unstable throughout the evaluation. The client is able to manage disability benefits should she be awarded disability payments at this time.

Tr. 117.

Dr. Morris referred Plaintiff to Edward Fisher, M.D., a psychiatrist. Dr. Fisher saw Plaintiff on May 4, 2005 and at follow up appointments on June 11, July 19, August 11, September 12, and October 4, 2004. Tr. 102-115. Dr. Fisher opined that Plaintiff "dislikes being ill/weak and has therefore minimized her symptoms resulting in impressions of doing better (e.g., GAF 76), when in reality her response and functioning has been poor." Tr. 89. Dr. Fisher offered a prognosis of "[p]oor, I strongly suspect that there is an insidious mental/neuro disorder that will lead to further decline over the years; I DO NOT believe, whatsoever, that she is malingering." Tr. 90. Dr. Fisher determined that Plaintiff would decompensate in a change in environment and would have difficulty working at a regular job because she "marginally functions socially and in her home due to intense anxiety, concentration problems and a severe sense of inadequacy all of which she struggles to hide -

6

24/7." Tr. 92.

Plaintiff was evaluated by a counselor, Ms. Jodi Carlton, seven times commencing May 5, 2005. Tr. 253. Ms. Carlton prepared a Mental Impairment Questionnaire on October 5, 2005. Ms. Carlton noted that Plaintiff's mood was unstable and varied significantly between sessions, ranging from irrational manic behavior to depressed mood. Tr. 26. Ms. Carlton noted signs and symptoms of decreased energy, inappropriate affect, feelings of guilt or worthlessness impairment in impulse control, generalized persistent anxiety, somatization unexplained by organic disturbance, mood disturbance, difficulty thinking or concentrating, agitation, persistent disturbances of mood or affect, change in personality, apprehensive expectation, perceptual or thinking disturbances, hyperactivity, flight of ideas, manic syndrome, deeply ingrained maladaptive patterns of behavior, occasional inflated self-esteem, easy distractibility, sleep disturbance, recurrent severe panic attacks, and likely bipolar syndrome. Tr. 260. Ms. Carlton noted functional limitations as follows: moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; extreme deficiencies of concentration, persistence or pace, and four or more episodes of decompensation within a twelve month period. Tr. 261. Ms. Carlton did not characterize Plaintiff as a malingerer. Tr. 262.

Plaintiff was treated by Terry L. Wimpey, M.D. on August 26, 2005 and October 4, 2005, subsequent to a visit in 2002 when she presented complaining of recurrent migraine headaches that had started during childhood. Although she did not return for her scheduled follow-up after the 2002 examination, she reported to Dr. Wimpey that her headaches had remained the same during the intervening years but had worsened over the last six months. Dr. Wimpey referred Plaintiff for a head MRI, which showed no significant abnormalities. Dr. Wimpey prescribed Topamax, which

gave Plaintiff a slight reduction in the severity of her headaches. Tr. 125-31. Dr. Wimpey suspected that Plaintiff was overusing a number of the medications she had been prescribed and was experiencing rebound headaches. Tr. 130.

Michael Carter, Ph.D. evaluated Plaintiff and prepared a Mental Residual Functional Capacity Assessment on December 20, 2005. Dr. Carter determined that Plaintiff had moderate degree of limitation in her activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. Tr. 277. Dr. Carter reviewed the opinions of Ms. Carlson, Dr. Butryn, and Dr. Fisher. He discounted the opinion of Ms. Carlson as a therapist not being an acceptable medical source. He gave mild weight to the opinion of Dr. Butryn. He also reviewed Dr. Fisher's evaluation and gave his opinion that Dr. Fisher did not appear to be aware that Plaintiff "is obtaining the meds from multiple sources." Tr. 279. Dr. Carter observed that Plaintiff was "partially credible" but her obtaining psychotropic medications from at least two different sources "suggests that she may be engaged in a degree of case promotion." Tr. 279.

There are no medical records demonstrating that Plaintiff sought treatment between October 2005 and June 2006. On June 30, 2006, when Plaintiff was examined at the Berkeley Family Practice after relocating from Georgia. Tr. 313. On August 2, 2006, Plaintiff presented at Berkeley Family Practice with her husband, who was concerned that Plaintiffs symptoms are not controlled. Plaintiff reported withdrawing from friends and family, having tearful spells, and hypersomnia. Plaintiff reporting feeling overwhelmed and having panic attacks whenever she was in an automobile. Plaintiff stated that she had been unable to work because of the fear of experiencing a panic attack at her job. She was taking multiple medications, including Prozac, Abilify, Vistaril, and

Provigil. She reported no suicidal ideations or recent manic episodes. Tr. 311. Plaintiff still experienced migraines several times a week. Plaintiff was referred to a psychiatrist. Tr. 312.

On September 9, 2006, Plaintiff reported to Oasis Christian Counseling that she had decreased interest in her usual activities, decreased energy, feelings of worthlessness, trouble concentrating. Tr. 325. On September 19, 2006, Paul Robbins, M.D. of Oasis Christian Counseling received a report from Plaintiff's husband that she "has now declined in functioning to the point she is willing to go into the hospital to get her medication stabilized." Tr. 324. Dr. Robbins referred Plaintiff to Palmetto Lowcountry Behavioral Health for assessment.

On September 19, 2006, Plaintiff presented to Palmetto Lowcountry Behavioral Health with symptoms of depression such as crying spells, helplessness, hopelessness, diminished energy, social withdrawal, poor sleep, 20 pound weight loss, increased somatic symptoms such as GI symptoms and headache, and suicidal ideations. Tr. 302. She was treated by Ira Rosenshein, M.D., Ph.D., who reported that Plaintiff reported a history in the past of manic periods where she would not sleep, felt on top of the world, was creative, and had buying spells "to the point where essentially the family has declared bankruptcy and moved from Georgia to here to live with her in laws." Tr. 302. Dr. Rosenshein noted that Plaintiff had tried Prozac, Celexa, Wellbutrin, and Effexor, and that she had a history of migraine headaches. Tr. 302. Plaintiff remained at Palmetto Lowcountry Behavioral Health on a course of Lithium Carbonate, Abilify, and Ambien at bedtime as needed for insomnia. Plaintiff reported that "she had her life back and was optimistic about the future and felt she could function at home now, and was looking forward to it." Tr. 301. She was discharged on September 25, 2006. Tr. 300.

On October 19, 2006, Plaintiff reported to Oasis Christian Counseling that she was forgetful,

had a short attention span, was pacing, changing clothes frequently, was having difficulty focusing and concentrating. Tr. 322. Dr. Robbins diagnosed her as mildly depressed and noted that she denied panic. Tr. 320. On November 8, 2006, Plaintiff was seen by Dr. Robbins. She was determined to be depressed with increased anxiety. Dr. Robbins discussed Plaintiff's noncompliance with medications and advised her to strictly adhere to medications and dosages. Tr. 318. On November 9, 2006, Plaintiff's husband reported that she "ran away from home last night" to Athens, Georgia "because she does not want to follow the medication strategies outlined yesterday." According to Plaintiff's husband, Plaintiff "has a longstanding [history of] noncompliance[.]" Tr. 317.

B.     The ALJ's Decision

Based on this and other evidence appearing in the record, including testimony provided by Plaintiff and a vocational expert, the ALJ determined that Plaintiff has the following severe impairments: a major depressive disorder, anxiety, and headaches. The ALJ determined that these impairments more than minimally impacted Plaintiff's ability to perform work-related activities. Tr. 15. However, the ALJ also determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404.1520(d), 404.1525, and 404.1526. Although Plaintiff asserted that Plaintiff's impairments met Listing 12.04 (C)(1), the ALJ determined that the depressive disorder, anxiety, and headaches resulted in only mild to moderate restrictions in Plaintiffs activities of daily living; moderate limitations in her social functioning; moderate deficiencies of her concentration, persistence, or pace; and one episode of decompensation in work or work-like settings. Tr. 17. The ALJ noted that Plaintiff symptoms improved and were controlled by the use of medication, and that Plaintiff had

a history of noncompliance. Tr. 17. The ALJ noted that Plaintiff's reports to her treating and examining physicians, as well as findings upon objective examination, are inconsistent with significant restrictions, and that the information provided by Plaintiff "generally may not be entirely reliable." Tr. 19. Specifically, the ALJ rejected the opinions of Dr. Fisher and found his medical opinions to be inconsistent with the weight of the evidence of record. Tr. 22. The ALJ therefore determined that Plaintiff has the residual functional capacity to perform a significant range of unskilled, medium work. Tr. 18.

C. The Magistrate Judge's Report and Recommendation

On judicial review, Plaintiff argued that the ALJ had erred in giving Dr. Fisher's opinions limited weight and in failing to find that Plaintiff met the listing criteria for 12.04(c)(1). Plaintiff argued that the ALJ should have given the opinion of Plaintiff's treating physician, Dr. Fisher, controlling weight because it was supported by medically accepted clinical and laboratory diagnostic techniques and was consistent with other evidence in the record. The Magistrate Judge determined that the ALJ "attempted to discount the treating physician's opinions by choosing to pick out of Dr. Butryn's statement where he opined that based on some of her testing Plaintiff was malingering." Entry 26, 15. The Magistrate Judge determined that the ALJ erred in failing to give weight to the remainder of Dr. Butryn's opinion, which generally is consistent with that of Dr. Fisher. The Magistrate Judge noted that Dr. Fisher's opinion also was supported by Drs. Morris, Robbins, and Plaintiff's counselor, Ms. Carlton, all of whom recognized Plaintiff's depression and anxiety.

The Magistrate Judge noted that the ALJ failed to conduct a proper analysis of the Listings because he completed only an analysis of Listing 12.04(C). The Magistrate Judge determined that the Plaintiff met the requirements of Listing 12.04(A) and (B). The Magistrate Judge concluded that

Plaintiff has a severe impairment that meets a listing, and she is therefore entitled to disability benefits. Entry 26, 21. Accordingly, the Magistrate Judge recommended that the Commissioner's decision be reversed and benefits awarded.

D. The Commissioner's Objections

The Commissioner asserts that the Magistrate Judge erred in (1) failing to find that substantial evidence supports the ALJ's decision, and (2) reversing for immediate payment of benefits. According to the Commissioner, the ALJ reasonably exercised his duty as factfinder to weigh the conflicting evidence and conclude that Plaintiff was not disabled. The Commissioner contends that the ALJ provided legitimate reasons for discounting Dr. Fisher's opinions, and that other evidence in the record supports the ALJ finding that Plaintiff is capable of performing the minimal demands of unskilled work. The court agrees that the Magistrate Judge erred in reversing for immediate payment of benefits.

Although the evidence uniformly supports a finding that Plaintiff suffers from depression and anxiety order, the question appears to be one of the degree of her impairment. Dr. Fisher determined that Plaintiff was completely debilitated by her symptoms; Dr. Butryn was of the opinion that Plaintiff exaggerated her symptoms to obtain disability payments; Dr. Carter opined that Plaintiff was not credible. Dr. Robbins found Plaintiff to be mildly depressed. The evidence supports a finding that Plaintiff improved on medication but was often noncompliant. Thus, contrary to the Magistrate Judge's finding, the record contains evidence that is inconsistent with the opinion of Dr. Fisher as to the severity of Plaintiff's symptoms. Accordingly, the court declines to adopt the recommendation of the Magistrate Judge that Dr. Fisher's opinion be given controlling weight, and that Plaintiff be found to meet Listing 12.04.

For the same reasons, the court cannot say that substantial evidence supports the finding of the ALJ. The Commissioner suggests that an appropriate decision would be to remand the matter to the ALJ to seek assistance from a mental health expert to assist him in reevaluating whether the degree of limitation imposed by Plaintiff's mental impairments rose to the requisite level under Listing 12.04. The court agrees with the Commissioner's suggestion.

### III. CONCLUSION

After reviewing the entire record, the applicable law, the briefs of counsel, the findings and recommendations of the Magistrate Judge, and the Commissioner's objections, the court declines to adopt the Magistrate Judge's Report and Recommendation. For the reasons stated,

It is ORDERED that the Commissioner's decision be reversed pursuant to sentence four of § 405(g) and the case be remanded for further administrative proceedings as set forth herein.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

September 10, 2009.